AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

MAY 23 2012

MATTHEW J. DYKMAN
CLERK

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

In the Matter of the Seizure of )
*(Briefly describe the property to be seized)* )
The proceeds, contents and any U.S. currency ) Case No. 12mr461
contained in U.S. New Mexico Federal Credit Union )
Savings Account, Account number 392397 )

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the __United States__ District of __New Mexico__ is subject to forfeiture to the United States of America under _____ U.S.C. § __See Below__ *(describe the property)*:

18 USC § 1343, 18 USC § 982(a)(2), 28 USC § 2461, 18 USC § 981(a)(1)(C), 18 USC § 981 (a)(1)(D)

U.S. New Mexico Federal Credit Union Savings Account, account number 392397

The application is based on these facts:

☑ Continued on the attached sheet.

_____
*Applicant's signature*

Nicolas Jonte, Special Agent U.S. Scret Service
*Printed name and title*

Sworn to before me and signed in my presence.

Date: May 23, 2012

_____
*Judge's signature*
KAREN B. MOLZEN
U.S. MAGISTRATE JUDGE

City and state: Albuquerque, NM

*Printed name and title*

## **AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT**

### Background

1. I am a Special Agent with the United States Secret Service (USSS), and have been so employed since December 2005. As a Special Agent, I have received training at the Federal Law Enforcement Training Center, and graduated from the Special Agent Training Class at the USSS Academy. My duties and responsibilities include investigations into possible violations of federal criminal laws of Title 18 (Money Laundering, Wire Fraud, Access Device Fraud, and other Federal Violations).

2. In my capacity as a Special Agent, I have conducted and participated in many financial crime investigations, written multiple affidavits in support of search warrants, and participated in the execution of search and seizure warrants.

3. In the course of my employment with the USSS, I have conducted or been involved in numerous investigations of alleged criminal violations, which have included: Wire fraud (18 U.S.C. § 1343) and Forfeiture (18 U.S.C. § 981 and 18 U.S.C. § 982).

4. Through my training and experience, I am familiar with the methods and practices used by individuals and organizations involved in financial crimes and illicit activities that generate large amounts of income. The methods to generate and hide large amounts of income include, among others:

a. To generate large amounts of income individuals involved in financial crime will solicit individuals to wire large amounts of money through fraudulent online schemes. The themes of these schemes include: online romantic relationships, business ventures, false inheritance, and lottery winnings.

b. Individuals involved in financial crime will place assets in names other than their own or rely on third parties to conduct financial transactions for them to avoid detection of these assets by government agencies;

c. Attempting to conceal the source and legitimize the profits from illegal activity by using domestic banks and their attendant services (i.e., safe deposit boxes, securities, cashier's checks, money drafts, electronic wire transfers, letters of credit, brokerage houses, real estate, shell corporations and business fronts).

5. Unless stated otherwise, I have personal knowledge of the matters set out in this affidavit. To the extent that any information in this affidavit is not within my personal knowledge, it was made known to me through my own review of the documents discussed in this affidavit and through reliable sources.

6. Because this affidavit is made solely to seize a bank account pursuant to 18 U.S.C. § 981 and § 982, I have not included every fact known to me about this investigation.

7. I make this affidavit in support of a warrant to seize the proceeds and contents from the following bank account owned and utilized by Sharon Sattler (Sattler) to transfer, conceal, and disguise proceeds derived from wire fraud, pursuant to 18 U.S.C. § 981 and 18 U.S.C. § 982:

**U.S. New Mexico Federal Credit Union (US NMFCU) account 392397.**

8. I further make this affidavit in support of a warrant pursuant to 18 U.S.C. §§ 981 and 982, and 28 U.S.C. § 2461, directing US NMFCU to freeze the contents of the account in place and to refuse the withdrawal of any amount from the account by anyone other than the USSS and while any contents of the account are frozen in place to accrue deposits, interest, and dividends, until the USSS directs that the contents of the account be finally liquidated and no contents remain (for no longer than a period of 30 days). Freezing the contents may be appropriate in the event the bank is unable to provide the funds immediately to the Federal Agents and therefore restricts the removal and/or dissipation of the funds by the account holder(s).

## FACTS SUPPORTING PROBABLE CAUSE

9.   On or about May 8, 2012, a US NMFCU, Financial Investigator Sharon Cole (Ms. Cole), informed me of possible illegal activity that was occurring at her financial institution.  Ms. Cole advised me that US NMFCU member Sattler was using her savings account (392397) to electronically wire approximately $60,000.00 to Lagos, Nigeria, over a one-year period.  Ms. Cole advised that when she contacted Sattler about the wire transfers to Nigeria, Sattler informed Ms. Cole that she had a business associate in Nigeria and was utilizing her savings account to electronically wire proceeds from their business ventures to her associate's account in Lagos, Nigeria.

10.  On or about May 18, 2012, Ms. Cole telephonically contacted me and advised that she had frozen Sattler's account due to potential fraudulent activity.  Ms. Cole stated that she froze Sattler's account after it had received numerous wire deposits of approximately $17,000.00 from multiple individuals.  Ms. Cole stated that Sattler telephonically contacted her in regards to her account being frozen.  Sattler advised Ms. Cole that she needed her savings account to be unfrozen so that she could wire proceeds to her business associate in Nigeria.  Sattler advised Ms. Cole that her business sold "government products" and "investments."  Sattler explained that she could provide Ms. Cole with proof that her business was legitimate.  Sattler

stated that her business was licensed and that she had a Tax Identification Number. To date, Sattler has not provided the above mentioned documents.

11. On or about May 18, 2012, I telephonically contacted Albuquerque Financial Crimes Task Force (ABQFCTF) Detective Carl Cleland (Det. Cleland) in regards to this investigation.

12. Between May 18th and 23rd, 2012, using information provided by Ms. Cole, Det. Cleland telephonically contacted several individuals who had wired money to Sattler's account. Each individual interviewed provided a different explanation as to why he/she wired money to Sattler's account at US NMFCU. Each individual interviewed advised that he/she was specifically instructed to wire money to Sattler's US NMFCU account. A brief summary of Det. Cleland's interviews is provided below:

    a. On or about May 21, 2012, Det. Cleland telephonically contacted Jean Paul Faubert in San Marcos, CA. Mr. Faubert confirmed that he wired $10,100.00 to Sattler's savings account at US NMFCU. Mr. Faubert advised that he received an email from a Willy Camron. Mr. Faubert stated Camron informed him that an individual in London, England, left Faubert an inheritance of $5.2 million dollars. Mr. Faubert advised that Camron instructed him to wire $6,100.00 to Sharon Sattler's account at U.S. NMFCU. Mr. Faubert said that he was told after he wired

the money to Sattler's account, she would forward his inheritance money to a bank in London so that he could claim his $5.2 million dollar inheritance. At the conclusion of the interview Det. Cleland confirmed that Mr. Faubert had not received $5.2 million dollars.

b. On or about May 21, 2012, Det. Cleland telephonically contacted Deborah L Perdue in Phoenix, AZ. Mrs. Perdue confirmed that she wired money into Sattler's US NMFCU savings account. Mrs. Perdue advised she received an email from a David Lee, who instructed her to wire money to Sattler's account at US NMFCU to cover the cost of "documents". Mrs. Perdue was told that Sattler would then forward the money to Nigeria. Upon confirmation that the funds were received in Nigeria, Mrs. Perdue would receive an ATM card worth two million dollars. At the conclusion of the interview Det. Cleland confirmed that Mrs. Perdue had not received an ATM card worth two million dollars. In addition, Mrs. Purdue provided Det. Cleland with documentation confirming that she wired $2,100.00 to Sattler's account (392397) at US NMFCU.

c. On or about May 21, 2012, Det. Cleland telephonically contacted Donna Teems in Brunswick, GA. Mrs. Teems confirmed that she wired money to Sharon Sattler's US NMFCU savings account. Mrs. Teems advised that her online

boyfriend sent her a present from another country. Mrs. Teems stated that she was contacted by a security company and was advised that the present was in New York, NY. Mrs. Teems stated that the security company told her that she could come to New York and retrieve the present herself, or pay $1,700.00 to have it mailed to her. Mrs. Teems stated she was instructed to wire the money to the account of Sharon Sattler at US NMFCU. Mrs. Teems advised that she was given the following account number 39237. At the conclusion of the interview Det. Cleland confirmed that Mrs. Teems had not received her present.

13. Criminal forfeiture upon conviction may not be sufficient to ensure the availability of the account because, by their very nature, the funds contained in the account are easily concealed, transferred or otherwise dissipated.

14. A restraining order may not be sufficient to assure the availability of the account because by their very nature, the funds contained in the account are easily concealed, transferred or otherwise dissipated.

15. Additionally, criminal forfeiture upon conviction may not be sufficient to ensure the availability of the account for forfeiture because there is reason to believe that the account is available to Sattler and third-parties, who cannot reasonably be relied on to abide by an order to maintain the account in

substantially the same condition as it is at the present time in order that it will be available for forfeiture.

16. Likewise, a restraining order may not be sufficient to ensure the availability of the account for forfeiture because there is reason to believe that the account is available to Sattler, who cannot reasonably be relied on to abide by an order to maintain the account in substantially the same condition as it is at the present time in order that it will be available for forfeiture.

17. In addition, a review of financial records revealed that Sattler executes multiple wire transfers a month to Lagos, Nigeria.

## CONCLUSION

WHEREFORE, your affiant respectfully requests that pursuant to 18 U.S.C. § 982(a)(2), and 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, allowing criminal forfeiture of proceeds based on 18 U.S.C. 1343, and pursuant to 18 U.S.C. §§ 981(a)(1)(C) and (D), allowing civil forfeiture of proceeds based on 18 U.S.C. § 1343, based on the fact that the account contains fungible proceeds which are subject to rapid dissipation, it is hereby requested that Special Agents of the USSS be authorized:

**To effect the seizure of all funds and monies contained in account number 392397 held in the name of Sharon Sattler at U.S. New Mexico Federal Credit Union (US NMFCU)** [address of US NMFCU]: 3939 Osuna Rd NE #300 B, Albuquerque, NM 87109

NS 5/23/2012
NS 5/23/2012
KBM 5/23/12

To direct the financial institution, UN NMFCU, to freeze the contents of the account in place;

To refuse the withdrawal of any amount from the account by anyone other than USSS;

To continue to accrue deposits in the account, while any contents of the account are frozen in place, until USSS directs that the contents of the account be finally liquidated and no contents remain; and/or

To liquidate some or all of the contents of the account at one or more times and upon liquidation of any contents to turn over the liquidated amount to USSS.

Freezing the contents could occur in the event the financial institution is unable to provide the funds immediately to USSS, and therefore restricts the removal and/or dissipation of the funds by the account holder.

I swear that this information is true and correct to the best of my knowledge, information and belief.

Approved by AUSA Cynthia Weisman

Respectfully submitted,

_____
Nicolas Jonte
Special Agent, USSS
Albuquerque, New Mexico

SUBSCRIBED TO AND SWORN BEFORE ME ON THIS

___23rd___ day of ___May___, 2012
_____
UNITED STATES MAGISTRATE JUDGE